

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

HEAVENLY HAM CO. and HONEY BAKED HAM COMPANY (Illinois),

Plaintiffs and Counter-Defendants,

v.

THE HBH FRANCHISE COMPANY, LLC; THE ORIGINAL HONEY BAKED HAM COMPANY OF GEORGIA, INC.; and THE HH FRANCHISE COMPANY, LLC, f/k/a FRANCO ACQUISITION COMPANY, LLC,

Defendants and Counter-Plaintiffs.

No. 04 C 2577

Suzanne B. Conlon, Judge

## MEMORANDUM OPINION AND ORDER

Heavenly Ham Co. and Honey Baked Ham Co., Illinois (collectively "plaintiffs" or "counter-defendants") sue The HBH Franchise Co., L.L.C., The Original Honey Baked Ham Co. of Georgia, Inc., and HH Franchise Co., L.L.C., f/k/a Franco Acquisition Co., L.L.C. (collectively "defendants" or "counter-plaintiffs") for breach of contract, tortious interference with contractual relations and prospective economic advantage, declaratory and injunctive relief to protect trade secrets, and trade secret misappropriation. Defendants counterclaim for breach of contract, breach of fiduciary duty, fraud and declaratory relief. Before the court are plaintiffs' motion to amend their answer to the second amended counterclaims, and the parties' four summary judgment motions.

1

## BACKGROUND

All facts are undisputed unless otherwise noted.

### A.    The Parties

Heavenly Ham Co. and Honey Baked Ham Company (Illinois) are Illinois corporations with their principal places of business in Cook County, Illinois. Heavenly Facts at ¶¶ 1-2. Heavenly sells spiral sliced specialty hams. *Id.* at ¶ 9. In 1982, Heavenly's founder, Leon Denning, incorporated Heavenly Ham, registered the name "Heavenly Ham" as a trademark and licensed the first Heavenly Ham specialty store outlets in Sarasota, Florida. *Id.* at ¶¶ 9-10; Def. Facts at ¶ 2.

In 1984, Denning licensed Hilton Head Hams of South Carolina, Inc. to franchise the Heavenly Ham store concept. Def. Facts at ¶ 3; Heavenly Facts at ¶ 19. Denning granted Hilton Head Hams exclusive use of the Heavenly Ham trademark throughout the United States. Def. Facts at ¶ 3. In 1985, Hilton Head Hams relocated from South Carolina to Georgia and was re-named Paradise Foods, Inc. *Id.* at ¶ 4; Heavenly Facts at ¶¶ 21-23. Between 1985 and 1993, Paradise added a number of retail stores as franchisees to the Heavenly Ham system. Def. Facts at ¶ 4.

In 2002, Paradise's assets were transferred to Franco Acquisition Co. *Id.* at ¶ 5. Franco was a Georgia company owned by descendants of Harry Hoenselaar. *Id.* Hoenselaar invented the spiral ham slicing machine and founded the Honey Baked Ham Co. *Id.* Franco was ultimately restructured into HH Franchise Co., which currently holds Paradise's assets, including the Heavenly Ham franchise system. *Id.* The Original Honey Baked Ham Company of Georgia, Inc. is part of the Honey Baked Ham Co. *Id.* at ¶ 6. The chief executive officer of Honey Baked Ham, Georgia is Linda van Rees, Hoenselaar's granddaughter. *Id.* HBH Franchise Co. is owned by some of the same

2

Hoenselaar family members who own HH Franchise Co.; the company manages the Honey Baked Ham franchise system. *Id.* at ¶ 7.

### B. Heavenly Ham and Peer Foods

In 1982, Denning asked Peer Foods, Inc. to produce a spiral sliced ham for his approval. Def. Facts at ¶ 20. Denning attests Peer first presented him with a stock bone-in select ham of a size and shape that could be sliced on machines developed by Denning. Heavenly Facts at ¶ 12. Peer representatives testified that Denning first presented Peer with a Honey Baked Ham and asked Peer to duplicate the product. Def. Resp. to Heavenly Facts at ¶ 12. Denning contends he gave Peer specific instructions to make the ham and Peer experimented with processing and curing the ham until it met his approval with respect to taste, texture, shape, size, water and salt content and trimming. Heavenly Facts at ¶ 13. Denning did not provide Peer with a list of ingredients or a formula for making the ham. Def. Facts at ¶ 20. Rather, Peer Foods produced samples, Denning requested changes to the samples, and Denning approved the final product. *Id.* Denning did not tell Peer how to make the changes, nor did he receive a copy of the specifications for making the ham; the Heavenly Ham formula and specifications remained at Peer Foods. *Id.* at ¶¶ 20-21, 23. There is no evidence in the record that Heavenly paid Peer for its work in developing the Heavenly Ham, or that there was an agreement assigning Peer's rights in the formula or specifications to Heavenly. *Id.* at ¶ 22.

Denning obtained a ham glaze from a supplier that was custom made and met his specific taste requirements. Heavenly Facts at ¶ 16. According to Denning, he provided instructions to franchise outlets regarding the method of glazing the ham, storing and refrigerating the ham, and wrapping the product for sale to the public. *Id.* at ¶ 17. Defendants dispute Denning's assertion that

3

he provided glazing, storing, refrigerating and wrapping instructions to franchise outlets. Def. Resp. to Heavenly Facts at ¶ 17.

Heavenly and Honey Baked Ham originally sliced Heavenly Hams at their own retail stores. Heavenly Facts at ¶ 46. Denning ultimately arranged for Peer Foods to produce spiral sliced hams for his licensed Heavenly Ham stores. *Id.* at ¶ 47; Def. Facts at ¶ 9. Denning supplied Peer with machines to spiral slice bone-in hams. Heavenly Facts at ¶ 48; HBH Facts at ¶ 10. Peer supplied all hams sold by franchise outlets. Heavenly Facts at ¶ 49.

Denning charged Peer a fee for the use of his slicing machines. Def. Facts at ¶ 11. Denning and Peer did not enter into a written contract when Denning began charging fees, or agree upon any term or duration as to how long the fee would be charged. *Id.* at ¶¶ 12-13. A Peer Foods memorandum dated February 3, 1987 indicates:

> Jim, Leon Denning wants us to charge Heavenly Ham stores $.03¢ per pound more than Honey Baked Ham stores effective February 3, 1987. This [is] for charge on slicers and repairs.

*Id.* at ¶ 14. In 1992, Denning and Peer reduced the slicing charges from $.05 to $.03 per pound. *Id.* at ¶ 15. Peer wrote Denning a confirmatory letter:

> Consistent with our conversation today, for the year 1992 we will pay you $.03 per pound lb. on all product sliced on your machines. As promised, we will renegotiate this annually.

*Id.* The slicing fees were included in the hams' per pound cost charged to all purchasers. Heavenly Facts at ¶ 51. Peer continued to pay Denning $.03 per pound on all spiral sliced product until 2003. *Id.* at ¶ 50; Def. Facts at ¶ 16. The parties contest the legitimacy of the slicing fee arrangement. *See e.g.*, Def. Add'l Facts at ¶¶ 20-22; Def. Resp. to Heavenly Facts at ¶¶ 52, 54-59, 62.

4

## C.    1993 Assignment Agreement

In 1993, Denning assigned the Heavenly Ham trademark to Paradise. *Id.*; Heavenly Facts at ¶¶ 24-25. Heavenly granted Paradise an exclusive license in the Heavenly Ham production and preparation processes. Heavenly Facts at ¶ 25. The agreement obligated Heavenly to supply or arrange for the supply of its trademarked product and slicing machines to the product's suppliers. *Id.* at ¶ 27. Heavenly had a right of first refusal to prevent Paradise from selling Paradise's rights under the agreement. *Id.* at ¶ 37. When the agreement was negotiated, Paradise did not have knowledge of the processing and slicing of hams. *Id.* at ¶ 29; Heavenly Add'l Facts at ¶ 10. Paradise relied on Denning's judgment regarding the supply, processing and slicing of ham. Def. Add'l Facts at ¶ 19; Heavenly Add'l Facts at ¶ 9. The parties dispute whether Paradise was aware of the slicing fees paid by Peer to Heavenly at the time of the assignment agreement. *See e.g.*, Heavenly Resp. to Def. Add'l Facts at ¶¶ 1-3. In March 1996, Heavenly and Paradise confirmed their relationship was governed by the assignment agreement, and that the former license agreement was mutually terminated. Def. Facts at ¶ 4.

In 1996, ownership of the trade secrets licensed under the assignment agreement, particularly the specifications and formula used to make the trademarked product, was questioned. Heavenly Facts at ¶ 72. According to Heavenly, Peer and Heavenly agreed that regardless of the specifications' ownership, Heavenly had a right to grant Paradise an exclusive license to sell the trademarked product through its franchise outlets. *Id.* Defendants contest this fact, asserting the alleged agreement was a draft position letter and that Peer changed its position as expressed in the unsigned draft letter. Def. Resp. to Heavenly Facts at ¶ 72.

5

### D. Heavenly Ham Receives Spoiled, "Green and Slimy" Hams From Peer

In 1985 or 1986 and continuing every other year thereafter, the Heavenly Ham franchise began receiving spoiled, "green and slimy" hams from Peer. Def. Add'l Facts at ¶ 26. A system-wide supply of spoiled hams occurred in 2001. *See* Heavenly Resp. to Def. Add'l Facts at ¶ 26. An independent audit of the Peer plant following the 2001 incident concluded the spoilage was "likely a result from a combination of factors both at Peer Foods and Distribution/retail processes," and noted Peer was operating with a number of plant deficiencies. Def. Add'l Facts at ¶¶ 27-28. Dr. James Dickson testified "the problems that I saw described . . . were so widespread geographically that from my personal experience and my opinion on this, I couldn't ascribe that to a common cause other than at the point of manufacture." *Id.* at ¶ 29. Peer admitted in an internal memorandum that the 2001 incident was due to inadequate distribution of nitrite into the ham during manufacture: "after much debate, the best theories were that green hams were due to Peer pumping issues resulting in an effective distribution of nitrite." *Id.* at ¶ 30. Plaintiffs' expert testified he found Heavenly's slicing machines "very difficult" to clean between certain rods, screws and gears. *Id.* at ¶ 52.

### E. Removal of Slicing Machines and Agreement with Peer

In June 2002, Franco purchased Paradise's assets. Heavenly Facts at ¶ 73. Franco was aware of Heavenly's right of first refusal and was concerned Denning would prevent the asset purchase. *Id.* at ¶¶ 77-78. Denning was notified in writing of the asset purchase offer and was given an opportunity to exercise his right of first refusal. *Id.* at ¶ 79; Def. Resp. to Heavenly Facts at ¶ 79. Denning waived his right of first refusal. *Id.* Defendants and Paradise knew of the slicing fees Peer paid to Heavenly and the existence of a quality problem with the trademarked product during the 2001 holiday season prior to the asset purchase. Heavenly Facts at ¶¶ 80-81. Paradise represented

6

in the asset purchase agreement that there was no uncured breach of the assignment agreement by Heavenly. *Id.* at ¶ 101.

Immediately following the acquisition of Paradise's assets, defendants discussed with Peer the possibility of terminating the slicing fees and removing Heavenly's machines from Peer. *Id.* at ¶ 86. Approximately one year later, on July 9, 2003, Linda van Rees wrote Denning regarding Franco's intent to replace Denning's slicing machines with machines supplied by Honey Baked Ham, Georgia:

> I also wanted to follow-up with you on the slicing machines at Peer. As we spoke about earlier this year, we will be replacing the slicing machines at Peer both due to bacteriological concerns with the old technology and for efficiency, since the new machines are more affordable to operate.

Def. Facts at ¶ 17.

On July 24, 2003, Honey Baked, Georgia, and Peer entered a lease agreement; Peer agreed to use Honey Baked, Georgia's slicing machines. *Id.* at ¶ 18; Heavenly Facts at ¶ 87. Peer removed Heavenly's machines and replaced them with Honey Baked, Georgia slicing machines. Heavenly Facts at ¶¶ 88, 90. Peer paid Honey Baked, Georgia "$.05 per pound of product for which Peer uses the equipment." *Id.* at ¶ 91. By September 2003, Peer began using the Honey Baked, Georgia machines and stopped using Heavenly's slicing machines. Def. Facts at ¶ 19. Heavenly did not agree to the removal of its machines from Peer. Heavenly Facts at ¶ 89. After replacing Heavenly's machines with Honey Baked machines, Peer discontinued paying Honey Baked, Illinois $.03 per pound for use of the slicing machines. *Id.* at ¶ 94.

Despite repeated requests, Heavenly never entered into a written agreement with Peer for the supply of products to the Heavenly Ham franchise system. Def. Add'l Facts at ¶ 16. Section 7.3 of

7

the assignment agreement describes procedures for naming additional approved suppliers, other than Peer, and was included to address Paradise's concern that a single supplier would jeopardize supplies to the franchise system. Heavenly Facts at ¶ 34. Denning and Paradise had ongoing conversations regarding a second supplier. Heavenly Add'l Facts at ¶ 22. Paradise requested the Heavenly Ham formula from Denning and Peer in order to obtain a second supplier to Peer Foods, but neither produced the formula. Def. Facts at ¶¶ 24-25. Heavenly does not have, and has never produced, the formula to make the Heavenly Ham. Def. Facts at ¶ 30. According to Linda van Rees, defendants needed to obtain trade secrets to manage the product appropriately. Heavenly Resp. to Def. Add'l Facts at ¶ 13. No other supplier was able to successfully reproduce the Heavenly Ham. Def. Facts at ¶ 26.

In August 2003, Franco contracted with Peer, naming Peer Foods its sole approved supplier for a five-year term. *Id.* at ¶ 27. Following execution of the supply agreement, Peer provided Franco a copy of the Heavenly Ham specifications. *Id.* at ¶ 28. In exchange for naming Peer exclusive supplier of Heavenly Ham for a five-year period, Peer agreed that HH Franchise owns the Heavenly Ham formula. Heavenly Add'l Facts at ¶ 21.

Following Franco's acquisition of Paradise, Peer made changes to the Heavenly Ham specifications in order to improve shelf life. Def. Facts at ¶ 31. Peer informed Denning of the proposed changes and Denning approved. *Id.* at ¶ 32. Franco has not requested Denning's approval to make changes to the trademarked product. *Id.* at ¶ 33. Heavenly is satisfied with the quality of the Heavenly Ham marketed by HH Franchising. *Id.* at ¶ 35.

From the date of the assignment to the present, Paradise and its successor-in-interest Franco/HH Franchise have paid or caused to be paid to Heavenly the full amount of continuing fees

as defined in the assignment. *Id.* at ¶ 36. HBH Franchise is not a party to the assignment agreement, lease agreement for slicing machines, or supply agreement with Peer Foods, Inc. *Id.* at ¶ 7.

## DISCUSSION

### I.    Motion to Amend Answer to Second Amended Counterclaims

Plaintiffs move to amend the pleadings and contend they lacked sufficient information to raise the affirmative defense of novation when answering the counterclaims. Plaintiffs assert discovery evidence regarding Franco's acquisition of Paradise gives rise to a novation defense. Specifically, plaintiffs assert they did not know when they filed their answer to the second amended counterclaims whether Paradise's assets were acquired by stock purchase or asset purchase.

Defendants contest plaintiffs' attempt to raise the novation defense after discovery has closed. They note plaintiffs fail to explain why the structure of the acquisition, stock purchase or asset purchase, affects the defense's earlier availability. Defendants contend plaintiffs have known the details of the asset purchase since 2002, when Paradise notified plaintiffs of Franco's offer to purchase Paradise's assets and provided plaintiffs a terms sheet describing the asset purchase transaction. Resp. to Mot. to Amend Ex. B. Defendants argue plaintiffs' knowledge of the transaction is further evidenced by: (1) plaintiffs' production of the 2002 asset purchase notification letter to defendants in July 2004; (2) plaintiffs' failure to request the asset purchase agreement or details of the transaction in written discovery; and (3) plaintiffs' receipt of information during a September 2004 deposition, two months before discovery closed, that the transaction was an asset purchase. Defendants conclude permitting the proposed novation defense would cause undue prejudice because discovery was not conducted regarding the parties' intent to substitute a new

agreement for the 1993 assignment agreement. Because intent is required to prove novation under Illinois law, defendants assert the unavailability of additional discovery would be prejudicial.

Fed. R. Civ. P. 15(a) provides leave to amend "shall be freely given when justice so requires." Leave may be denied where there has been undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or if the amendment would be futile. *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993), *quoting Forman v. Davis*, 371 U.S. 178, 182 (1962). Novation is an affirmative defense that is waived if not specifically plead. *See e.g., Burnett v. West Madison State Bank*, 375 Ill. 402, 410, 31 N.E.2d 776, 780 (Ill. 1940); *U.S. Fidelity and Guaranty Co. v. Klein Corp.*, 190 Ill. App. 3d 250, 256, 558 N.E.2d 1047, 1051 (Ill. App. Ct. 1989).

The proposed amendment to the pleadings is not based on new evidence and must be denied. *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 354 (7th Cir. 1982). Preliminarily, plaintiffs fail to explain why the availability of a novation defense is dependent on the nature of the asset purchase transaction, so that the defense could not have been pled earlier. Even if the nature of the transaction affected the defense's availability, the record demonstrates plaintiffs were provided information indicating the transaction involved an asset purchase possibly as early as 2002, and certainly before discovery closed. A novation defense requires a showing that all parties intended to substitute a new agreement for an old agreement. *Alton Banking & Trust Co. v. Schweitzer*, 121 Ill. App. 3d 629, 634, 460 N.E.2d 105, 108 (Ill. App. Ct. 1984). Defendants would be unduly burdened if the motion is granted because discovery closed on November 24, 2004, and dispositive motions were filed on that date. *See Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (defendant prejudiced

if leave to amend granted because it would be put to additional discovery). The introduction of a new affirmative defense at this juncture would be prejudicial.

## II.     Summary Judgment Standard of Review

On cross-motions for summary judgment, each movant must satisfy the requirements of Rule 56. *EEOC v. Admiral Maint. Serv., L.P.*, No. 97 C 2034, 1998 WL 102748, at * 6 (N.D. Ill. Feb. 26, 1998). Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. Nat'l Human Res. Comm., Inc.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

## III.    Plaintiffs' Partial Summary Judgment Motion on Verified Amended Complaint

Plaintiffs argue the removal Heavenly's slicing machines in August 2003 breached Sections 7 and 8 of the assignment agreement. Section 7.1 provides: "[i]n consideration of the transactions contemplated hereby and the Continuing Fees to be paid as described herein, and unless otherwise agreed to by Assignee, Assignor shall supply or arrange for the supply of Trademarked Products from Approved Suppliers to satisfy the requirements of the Franchise System as determined by Assignee." Section 8 provides "[i]n consideration of the transactions contemplated hereby and the Continuing Fees to be paid pursuant to Section 9, and unless otherwise agreed to in writing by

11

Assignee, Assignor shall provide a sufficient number of slicing machines and related spare parts to all suppliers of Trademarked Products in order to ensure such suppliers can produce sufficient quantities of Trademarked Products to meet the needs of the Franchise System." Heavenly Facts Ex. 10.

Plaintiffs contend the provisions collectively obligate Heavenly to supply the product and provide slicing machines for production. Plaintiffs assert the term "agreed" as used in Sections 7 and 8 means that both parties must mutually assent to release Heavenly from supplying slicing machines. Accordingly, plaintiffs argue defendants' unilateral removal of the machines usurped Heavenly's "right" under the agreement. Plaintiffs argue the continuing fees provided by agreement may only be reduced if Heavenly breaches the agreement. Plaintiffs seek: (1) summary judgment on Count I of the amended complaint in the amount of $.03 per pound for all trademarked product purchased from Peer after July 24, 2003; (2) a declaration that defendants breached the assignment agreement by removing Heavenly's slicing machines from Peer; (3) a declaration that defendants breached the assignment agreement by installing their own slicing machines at Peer; (4) a declaration that defendants do not have a unilateral right under the assignment agreement to relieve Heavenly of its right and obligation to supply the trademarked product under Section 7.1; (5) a declaration that defendants do not have a unilateral right under the assignment agreement to relieve Heavenly of its right and obligation to provide a sufficient number of slicing machines to suppliers under Section 8; and (6) a declaration that the amount of continuing fees owed Heavenly under the assignment agreement may only be reduced in the event of Heavenly's breach of the assignment agreement.

Defendants respond plaintiffs confuse contractual obligations with contractual rights. While the assignment agreement undisputedly obligates Heavenly to supply the trademarked products and

12

slicing machines, defendants contend plaintiffs' transposition of Heavenly's obligation into a "right" to supply products and slicing machines incorrectly converts the duty into an entitlement that cannot be waived or excused. Defendants assert the phrase "unless otherwise agreed to by Assignee" does not require the assignor's consent to excuse the assignor from performance. Finally, defendants agree that continuing fees may not be reduced absent a breach by Heavenly.

The court must initially determine, as a matter of law, whether the contract language is ambiguous as to the parties' intent. *Quake Construction Inc. v. American Airlines, Inc.*, 141 Ill.2d 281, 288, 565 N.E.2d 990 (Ill. 1990). Contract provisions must be viewed as a whole to give effect to the parties' intent. *Schek v. Chicago Transit Authority*, 42 Ill. 2d 362, 247 N.E.2d 886, 888 (Ill. 1969); *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344, 736 N.E.2d 145, 150 (Ill. App. Ct. 2000); *Kerton v. Lutheran Church Extension* Fund, 262 Ill. App. 3d 74, 634 N.E.2d 16, 18 (Ill. App. Ct. 1994). "If no ambiguity exists, the parties intent must be derived . . . solely from the writing itself." *Quake*, 141 Ill.2d at 288; *see also Metalex Corp. v. Uniden Corp.*, 863 F.2d 1331, 1333 (7th Cir. 1988) (interpretation of an unambiguous contract is a question of law for the court; summary judgment should be granted based on the plain meaning of the contract itself). When interpreting a contract, terms are to be given their plain and ordinary meaning. *Vill. of Glenview v. Northfield Woods, Water & Utility*, 216 Ill. App. 3d 40, 48, 576 N.E.2d 238, 244 (Ill. App. Ct. 1991). "Parties entering into an agreement are presumed to have used terms having no technical meaning . . . the words are to be construed according to their common understanding and common usage." *Id.*, (citations omitted). A contract is not ambiguous merely because the parties dispute the meaning of its terms. *Id.*

13

The agreement's language is unambiguous. Plaintiffs' argument that the express contractual language requires agreement between the parties to relieve Heavenly of its "rights" and obligations must be rejected. "The intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by viewing each part in light of the others." *Medcom Holding Co. v. Baxter Travenol Labs. Inc.*, 984 F.2d 223, 226 (7th Cir. 1993) (citations omitted). Viewing the contract provisions as a whole and giving terms their plain and ordinary meaning, Sections 7 and 8 of the assignment agreement obligate Heavenly to provide trademarked product and slicing machines unless defendants agree to relieve Heavenly from its obligations. While the phrase requires defendants' agreement in the event Heavenly seeks relief from its obligations, it does not convert Heavenly's obligation into a right. This interpretation is clear from the parties' choice of language in other provisions of the agreement. For example, the provisions do not state Heavenly "shall be entitled" to provide slicers, yet the parties used this language in other provisions of the agreement. *See e.g.*, Def. Mot. Ex. 9, Section 9. Further, the agreement clearly expresses the parties' intention for mutual consent in other provisions, such as Section 7.3, which states "Assignor and Assignee shall mutually agree upon an appropriate procedure . . ." Accordingly, the plain language of Sections 7 and 8, when viewed as a whole, does not require Heavenly's consent to excuse Heavenly from performance.

Because the contract language is unambiguous, the court shall not consider parol evidence. Nonetheless, the court briefly addresses the evidence plaintiffs offer to support their interpretation, including deposition testimony from Bucky Cook, Paradise's president, and Leon Denning, as well as a prior unexecuted draft of the assignment. The evidence fails to support plaintiffs' claims. Cook testified that in negotiating Section 8, he and Denning were aware that Heavenly may eventually

14

want to extricate itself from the supply obligations. Because the supply obligations were important to defendants, Section 8 permitted an opening to provide Heavenly relief from supply obligations subject to defendants' agreement. Cook Dep. at 73-74. Plaintiffs' contrived contention that the testimony evidences Heavenly could only be relieved from obligations if it sought relief must be rejected. The testimony clearly supports the agreement's plain meaning that *in the event* Heavenly sought relief from its obligations, defendants' approval was required. Sections 7 and 8 do not require Heavenly's agreement should defendants decide to release Heavenly from obligations. Denning's deposition testimony that he understood mutual agreement was required must be rejected for the same reason. Finally, plaintiffs' reliance on the prior unexecuted draft of the assignment is misplaced. While the draft states "[a]ssignee may, *at its sole option*, terminate assignor's obligation to provide services under sections seven and eight above," this stricken language appeared in draft Section 9 and pertained to defendants' recourse in the event Heavenly breached Sections 7 or 8 by failing to supply product.

The contract language is unambiguous and does not support plaintiffs' interpretation. Summary judgment in plaintiffs' favor on Count I must be denied. Plaintiffs' request for declaratory relief is denied, with the exception of their request for a declaration that the amount of continuing fees owed Heavenly under the assignment agreement may only be reduced in the event of a breach of the agreement by Heavenly. Defendants do not dispute this interpretation. Accordingly, the court declares that the continuing fees may only be reduced under Section 9 of the assignment agreement as a result of Heavenly's breach of the agreement.

15

## IV. Plaintiffs' Partial Summary Judgment Motion on Affirmative Defenses to Verified Amended Complaint

Plaintiffs move for partial summary judgment on defendants' affirmative defenses that: (1) the contract is void or unenforceable because it requires performance in perpetuity (fifth affirmative defense); and (2) the agreement between plaintiffs and Peer was a vehicle for tax evasion and is void as against public policy (ninth and tenth affirmative defenses). Plaintiffs argue the assignment agreement's indefinite duration is enforceable under Illinois law because the obligation to pay fees continues in perpetuity only so long as Heavenly's services are requested. Further, plaintiffs contend the slicing fee agreement between Heavenly and Peer did not violate public policy because it was not a sham contract entered into for the sole purpose of avoiding taxes. Rather, plaintiffs assert the contract had *bona fide* commercial purposes.

Defendants agree that the parties intended the continuing fee to be paid only so long as defendants requested Heavenly's services or unless Heavenly breached the agreement. Defendants do not contest summary judgment on their fifth affirmative defense. Accordingly, plaintiffs' motion for summary judgment on defendants' fifth affirmative defense must be granted.

Defendants contend plaintiffs' motion on affirmative defenses 9 and 10 must be rejected because the record is replete with evidence that hidden slicing fees were conceived as a way to avoid taxes. "Agreements are not held to be void, as being contrary to public policy, unless they be clearly contrary to what the constitution, the statutes or decisions of the courts have declared to be the public policy or unless they be manifestly injurious to the public welfare." *H&M Comm. Driver Leasing v. Fox Valley Containers, Inc.*, 209 Ill.2d 52, 57, 805 N.E.2d 1177 (Ill. 2004). Contracts that are

entered into for the purpose of evading taxes may be void as against public policy. *See Dormeyer v. Haffa*, 343 Ill. App. 177, 98 N.E.3d 532 (Ill. App. Ct. 1951).

Plaintiffs proffer several facts that purportedly establish the slicing fee agreement was not created for the sole purpose of evading taxes. Heavenly Facts at ¶ 52-64. Most of these facts are disputed. Def. Resp. to Heavenly Facts at ¶¶ 52, 54-59, 62; *see also* Def. Add'l Facts at ¶¶ 20-22. Undisputed facts indicate that slicing fees paid to Honey Baked, Illinois and deposited in a bank account owned by Honey Baked, Illinois were personally withdrawn by Denning and deposited in a bank account in the Cayman Islands. *Id.* at ¶¶ 60-61. Further, Denning pled guilty and is serving a sentence for federal tax evasion charges. The charges include Denning's failure to report all Honey Baked, Illinois sales, and expensing consulting fees not reported as income. *Id.* at ¶ 63. Viewing all facts and inferences in a light most favorable to defendants, an issue of fact remains regarding the legitimacy of the slicing fee arrangement. Summary judgment on defendants' ninth and tenth affirmative defenses must be denied.

## V.    Plaintiffs/Counter-defendants' Summary Judgment Motion on Defendants' Second Amended Counterclaims

Defendants counterclaim that Heavenly Ham: (1) breached the assignment agreement by failing to perform and provide assistance pursuant to Sections 7, 8 and 9 of the assignment agreement (Counterclaim I); (2) breached its express representation and warranty that it owned the trade secrets and production process (Counterclaim II); (3) breached the contract by failing to disclose the existence of the Peer fee arrangement (Counterclaim III); (4) breached its fiduciary duty by failing to disclose the Peer fee arrangement (Counterclaim V);[1] and (5) fraudulently failed to

---

[1] Counterclaim IV, breach of implied warranty, was dismissed by the court on 10/05/04. *See* Dkt. No. 46-1.

disclose the existence of the Peer fee arrangement (Counterclaim VI). Defendants also counterclaim for declaratory judgment that they are discharged from any and all future obligations to Heavenly under the assignment (Counterclaim VIII).[2]

Plaintiffs argue they are entitled to summary judgment on all counts of the second amended counterclaims because the counterclaims have been discharged under the doctrine of novation, defendants have not established damages, and defendants are estopped from declaring breach of contract. Plaintiffs contend summary judgment is appropriate on specific counts of the second amended counterclaims because: (1) Heavenly had the right to convey all rights in the assignment agreement; (2) Heavenly had no duty to disclose the slicing fee under the terms of the assignment agreement; (3) no fiduciary duty between Heavenly and defendants existed; (4) the slicing fee was not a material fact to the assignment's negotiations; and (5) defendants cannot prove the 2001 spoiled ham issue constitutes a breach of the assignment agreement.

## A.    Novation

Plaintiffs' argument that the counterclaims have been discharged by the doctrine of novation is raised for the first time on summary judgment. Novation is an affirmative defense and is waived if not specifically plead. *See e.g.*, *Burnett v. West Madison State Bank*, 375 Ill. 402, 410, 31 N.E.2d 776, 780 (Ill. 1940); *U.S. Fidelity and Guaranty Co. v. Klein Corp.*, 190 Ill. App. 3d 250, 256, 558 N.E.2d 1047, 1051 (Ill. App. Ct. 1989). The novation argument is thus rejected.

---

[2]The declaratory judgment counterclaim was misnumbered Counterclaim VIII instead of Counterclaim VII.

## B.    Injury or Damages

Plaintiffs argue summary judgment is appropriate because defendants have not established damages. According to plaintiffs, the alleged damages arising from the franchise outlets paying both the slicing fee charged by Heavenly to Peer, and the 2.5% continuing fee required of franchisees under the assignment agreement, did not damage defendants because the fees were paid by the franchisees. Further, to the extent defendants seek damages based on lost profits, plaintiffs contend there is no record evidence establishing the amount of lost profits or the basis for their calculation.

Defendants respond that plaintiffs confuse the concepts of injury and damages. Defendants argue plaintiffs' breach of contract and fraudulent inducement of contract caused injury and harm to Paradise and its successor. For example, defendants assert Paradise would have negotiated a lower continuing fee had it known about the slicing fees, and that Paradise was placed in a difficult position with franchisees who unknowingly purchased a product at marked-up or inflated wholesale prices. Further, defendants contend plaintiffs' failure to perform contractual obligations caused defendants to expend time and money for personnel and consultants to solve problems of spoiled ham, and they were forced to enter into a five year exclusive supply agreement with Peer Foods to obtain the formula for Heavenly Ham. Defendants conclude plaintiffs' implication that the franchisees could bring an action against plaintiffs for the breach must fail because the franchisees are not parties to the assignment, are not in privity with a party to the assignment, and are not intended third party beneficiaries.

Plaintiffs' motion for summary judgment based on failure to establish damages must be denied. Damages are not the only remedy available to defendants. Proof of liability in a contract or warranty action is complete when the breach is established. *Hydrite Chemical Co. v. Calumet*

*Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995). At that point, nominal damages may be awarded even if no injury can be shown from the breach. *Id.* Further, a party has an election of remedies for fraud and may seek rescission or damages in either contract or tort. *Central Illinois Public Serv. Co. v. Allianz*, 244 Ill. App. 3d 709, 614 N.E.2d 34, 41 (Ill. App. Ct. 1993). Under the declaratory judgment claim, defendants seek to terminate the contract and be discharged from future performance, because under the doctrine of material breach "a party to a contract is discharged from his duty to perform where there is a material breach of the contract by the other party." *Dragon Const., Inc. v. Parkway Bank & Trust*, 287 Ill. App. 3d 29, 33, 678 N.E.2d 55, 58 (Ill. App. Ct. 1997). Viewing the evidence in a light most favorable to defendants, they may be able to establish damage or injury at trial.

### C.      Estoppel

Plaintiffs argue defendants are estopped from declaring breach of contract because Paradise represented to Franco during the asset purchase that there were no uncured breaches or defaults existing on Heavenly's behalf. Plaintiffs assert defendants are Paradise's assignees and Paradise is estopped from denying its recitals in the asset purchase agreement. Further, plaintiffs contend Franco knew of the Peer slicing fees and the 2001 spoiled hams before it acquired Paradise's assets. According to plaintiffs, Franco ratified all existing facts and circumstances by accepting the asset purchase transaction's benefits. Finally, plaintiffs contend defendants are estopped because they failed to notify plaintiffs of their alleged breach prior to requesting waiver of Heavenly's right of first refusal.

Plaintiffs' estoppel arguments must be rejected. First, the argument based on Paradise's representation during the asset purchase agreement is undeveloped and unsupported. To the extent

20

plaintiffs contend Paradise's representation constituted a release or admission, the argument is rejected. Inquiry into the circumstances constituting the alleged breach, such as Heavenly's actual ownership of the trade secrets and failure to perform and provide assistance, arose after the asset purchase. Second, ratification may occur if an agent engages in an unauthorized transaction on a principal's behalf and the principal, with full knowledge of the unauthorized transaction, retains the transaction's benefits. *See e.g.*, *Sphere Drake Ins., Ltd. v. All Am. Life Ins. Co.*, 300 F. Supp. 2d 606, 623 (N.D. Ill. 2003). Paradise did not act as Franco's agent when entering the assignment agreement with Heavenly or when engaging in the acquisition transaction with Franco. Finally, Franco had no duty to notify plaintiffs of their alleged breach prior to requesting waiver of Heavenly's right of first refusal. Paradise was obligated to present Heavenly the opportunity to exercise its right of first refusal before accepting Franco's purchase offer. However, Franco, as a third party purchaser, certainly had no obligation to discuss Heavenly's potential breaches with Heavenly before the acquisition occurred.

**D.    Additional Arguments**

Plaintiffs argue summary judgment is appropriate on defendants' second counterclaim, that Heavenly breached its express representation and warranty that it owns the trade secrets and production process, because in 1996 Peer and Heavenly agreed Heavenly had the right to license the trade secrets. This argument must fail. Setting aside the validity of the alleged 1996 agreement between Peer and Heavenly, defendants contend Heavenly misrepresented that it *owned* the trade secrets, regardless of whether it had the right to license the trade secrets. Evidence has been submitted suggesting Peer, not Heavenly, owns the Heavenly Ham specifications. Indeed, Peer provided the specifications to Franco, whereas Heavenly was unable to do so. Defendants contend

21

plaintiffs' inability to provide them with the trade secrets prevented them from managing the product and securing a second supplier. Issues of fact exist regarding Heavenly's representation of ownership and actual ownership of the trade secrets. Summary judgment on the second counterclaim is inappropriate.

Plaintiffs seek summary judgment on defendants' counterclaim that Heavenly's failure to disclose the slicing fees to Paradise constituted an omission of material fact during the assignment agreement negotiations because: (1) there was no duty to disclose the slicing fees under the terms of the assignment agreement; (2) no fiduciary duty existed between Heavenly and defendants; and (3) the existence of slicing fees was not material to the assignment negotiations.

A duty to disclose a material fact may arise in several situations:

> First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts. Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. This position of superiority may arise by reason of friendship, agency, or experience.

*Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 500, 675 N.E.2d 584, 593 (Ill. 1996) (citations omitted). Defendants contend they developed a dependent relationship with Heavenly based on their longstanding relationship prior to the 1993 assignment agreement. It is undisputed that Paradise was dependent on Denning daily in the 1980's. *See* Heavenly Resp. to Def. Add'l Facts at ¶ 18. It is also undisputed that Paradise did not possess knowledge of ham processing and slicing when the agreement was negotiated and that Paradise relied on Denning's judgment. Defendants' contention that knowledge of the slicing fees was material finds support in the record. Viewing the evidence

22

in a light most favorable to defendants, they may be able to establish a duty to disclose, a fiduciary duty and that the slicing fee was a material fact.

Finally, plaintiffs contend defendants cannot establish a breach of the assignment agreement based on the 2001 spoiled ham problem because there is insufficient scientific evidence for a jury to conclude that defective and contaminated slicing machines caused the spoilation. The assignment required plaintiffs to supply high quality product. *See* Def. Mot. Ex. 9, Sections 7-8. Defendants submit evidence that the green, slimy hams were "likely a result from a combination of factors both at Peer Foods and Distribution/Retail processes," including the spiral slicers provided by Heavenly. Def. Add'l Facts, Ex. 17. In addition, defendants provide evidence indicating the ham conditions were due to the manufacturing process. *Id.* at ¶ 29, Exs. 18, 22. Finally, defendants submit evidence that plaintiffs breached the contract by failing to arrange for an adequate supply of high quality ham and machines because the approved supplier, Peer, had deficiencies in its environmental sanitation control standards. *Id.* at Ex. 17. Defendants may be able to show the ham problems were caused by the Heavenly machines.

Genuine issues of fact exist on defendants' counterclaims. Plaintiffs' motion for summary judgment must be denied.

## VI.     Defendants' Partial Summary Judgment Motion on Verified Amended Complaint

### A.     Breach of Contract (Count I, Count IV (B)-(F))

Defendants contend plaintiffs' claims founded on contract theory must fail because defendants did not breach plaintiffs' rights under the assignment and the assignment does not require Heavenly's approval to change the trademarked product.

### 1. Replacement of Slicing Machines

Defendants assert plaintiffs' claim that the replacement of Heavenly's slicing machines with their own confuses plaintiffs' legal obligation under the assignment with a right to supply machines. Viewing the facts in plaintiffs' favor, summary judgment on this issue must be granted. Indeed, plaintiffs' summary judgment motion on this issue is denied because the unambiguous contract language does not support plaintiffs' argument that replacement required both parties' agreement. Defendants did not breach the agreement by discharging plaintiffs' supply obligations without plaintiffs' consent. Summary judgment on plaintiffs' claim that defendants breached the assignment by not using plaintiffs' slicing machines is granted.

### 2. Supply Agreement with Peer Foods

Defendants argue summary judgment is appropriate on plaintiffs' claim that the assignment was breached when defendants entered their own supply agreement with Peer Foods, in light of Section 7.4 of the agreement:

> [N]othing shall preclude Assignee from contacting and contracting on its own with Approved Suppliers for the production, supply and delivery of Trademarked Products and with any supplier, *including Approved Supplier*, for the production, supply and delivery of Spiral Hams.

Def. Facts Ex. 9 (emphasis added). Plaintiffs respond Section 7 must be read in conjunction with Section 8's requirement that Heavenly supply slicing machines to "all suppliers of Trademark Product," and argue defendants' exclusive supply agreement with Peer violates Section 8 by not requiring usage of Heavenly's machines to slice Heavenly Ham. Plaintiffs further contend the exclusive supply agreement violates the assignment's provision that Franco be an exclusive licensee of all trade secrets by attempting to make Franco the owner of the formula. Finally, plaintiffs argue

defendants' attempt to name Peer as the exclusive approved supplier of Heavenly Ham for a five year period breached Section 7, which provides Heavenly the right to name approved suppliers.

Plaintiffs' argument regarding the use of its machines is rejected. Again, plaintiffs' obligation to provide machines to all providers was discharged by defendants. Similarly, plaintiffs' argument that they maintained exclusive authority to name suppliers must fail. While plaintiffs had an obligation to assist in naming suppliers, Section 7.4 clearly gives the assignee the right to contract "on its own" with other suppliers.

Viewing the facts in plaintiffs' favor, there remains a question of fact as to who possessed ownership rights to the trade secrets. Assuming for summary judgment purposes that plaintiffs owned the trade secrets, Peer's purported conveyance of ownership rights to defendants may have breached the assignment, which provided defendants with a license only. Defendants' motion for summary judgment on plaintiffs' claim regarding the supply agreement with Peer Foods must be denied.

### 3. Use of Trademark Interests

Defendants allege summary judgment must be granted on plaintiffs' claim that defendants breached the assignment by failing to use plaintiffs' trade secrets to produce the Heavenly Ham product because: (1) plaintiffs have not established they own the trade secrets to produce the Heavenly Ham; (2) plaintiffs have failed to establish defendants marketed trademarked products without using the trade secrets; and (3) the assignment does not require defendants to market the trademarked products using trade secrets. Further, defendants argue plaintiffs' request for judicial declaration that the assignment requires plaintiffs to "approve any changes made to the trademarked products" must be rejected because the assignment conveys the trademark interests without

25

restriction or limitation and does not state plaintiffs' approval to make changes to the product is required.

Plaintiffs respond defendants' arguments must fail because Heavenly had the right to convey to Paradise the rights set forth in the agreement and because Heavenly owns the formula. Further, plaintiffs contend defendants marketed the Heavenly Hams in a manner not approved by Heavenly by shipping hams cut in half to stores, as opposed to hams shipped as a whole and cut in half at the store. Plaintiffs argue a construction of the assignment agreement that permits defendants to use the Heavenly Ham trademark on products not made using the Heavenly Ham wholesale production process, as defined in the agreement, is absurd, unreasonable and inequitable. Finally, plaintiffs assert permitting defendants to change the Heavenly Ham product without their approval would allow an exclusive licensee to unilaterally change a product formula that it does not own.

Plaintiffs fail to establish defendants marketed trademarked products without using the trade secrets. Viewing the facts in plaintiffs' favor and assuming: (1) plaintiffs own the trade secrets; (2) defendants have marketed Heavenly Ham that is cut in half at Peer rather than at store level; and (3) defendants cannot use the Heavenly Ham trademark on products not made using the Heavenly Ham wholesale production process, plaintiffs have not established that the Heavenly Ham process requires the product be cut in half at the store level. It is undisputed that plaintiffs never produced in discovery the formula to cure, smoke or produce the Heavenly Ham. Heavenly Resp. to Def. Facts at ¶ 30. Summary judgment on plaintiffs' claim that defendants breached the assignment by failing to use plaintiffs' trade secrets to produce the Heavenly Ham product must be granted.

Defendants' summary judgment motion on plaintiffs' request for a declaration that the assignment requires plaintiffs' approval to make changes to the trademarked products must be

granted. The assignment does not contain this requirement. Section 2 of the agreement provides defendants a license to use the trademark interests without limitation or restriction. Further, plaintiffs have not raised a genuine issue of fact that changes were made to the product without their approval.

## B.     Trade Secret Misappropriation (Count VI)

Defendants contend plaintiffs' trade secret misappropriation claim must be dismissed because Heavenly is not the owner of the trade secrets and defendants may, pursuant to Section 11 of the agreement, legally license and use the trade secrets.

Plaintiffs respond that Heavenly owns all trade secrets comprising the Heavenly Ham product and, even if the court finds otherwise, Heavenly was at a minimum an exclusive licensee of the trade secrets. Further, if the court finds Heavenly does not own the Heavenly Ham formula and does not have the right to bring a misappropriation claim as exclusive licensee, plaintiffs contend the record is devoid of evidence refuting Heavenly's ownership of the remaining trade secrets comprising the final product, such as the slicing at the manufacturer, glazing, refrigeration and wrapping. Plaintiffs argue the trade secrets were misappropriated because defendants' exclusive license to use the trade secrets was conditioned on Heavenly supplying the Heavenly Hams and slicing machines.

Under the Illinois Trade Secret Act, plaintiffs must establish: (1) ownership of a trade secret; (2) misappropriation; and (3) use of the trade secret by defendants. *Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992). Viewing the facts in plaintiffs' favor and assuming their ownership of the trade secrets, plaintiffs fail to establish the trade secrets were misappropriated. Misappropriation under the Illinois Trade Secret Act requires a showing that trade secrets were acquired by improper means, such as theft, bribery, misrepresentation, espionage,

27

or breach of a confidential relationship. *See* 765 ILCS § 1065/2. Plaintiffs' failure to establish defendants' acquisition of the trade secrets, through the assignment, was improper is fatal to the misappropriation claim. Summary judgment on plaintiffs' trade secret misappropriation claim must be granted.

### C. Tortious Interference with Contractual Relations and Prospective Economic Advantage (Counts II and III)

Defendants contend summary judgment must be granted on plaintiffs' tortious interference claims because defendants were legally privileged to replace the slicing machines at Peer Foods. Specifically, defendants contend the tortious interference with contract claim fails because Heavenly's arrangement with Peer was without fixed duration and was terminable at-will. Further, defendants argue the interference with prospective economic advantage claim must fail because defendants had a unilateral right to replace plaintiffs' slicing machines and the interference was not malicious.

Plaintiffs argue their slicing fee agreement with Peer was not terminable at-will and, even if the agreement is considered an at-will contract, defendants maliciously caused a breach of contract. Plaintiffs contend defendants did not have a right to remove Heavenly's machines from Peer or a legal "privilege" to interfere with plaintiffs' prospective relationship with Peer.

To prevail on the tortious interference with contract claim, plaintiffs must establish: (1) the existence of a valid and enforceable contract with Peer; (2) defendants' knowledge of the existing contract; (3) defendants' intentional and unjustified inducement of a breach; (4) subsequent breach by Peer due to defendants' wrongful conduct; and (5) resulting damage to plaintiffs. *Prince v. Zazove*, 959 F.2d 1395, 1397 (7th Cir. 2002). Plaintiffs' contention that the arrangement with Peer

28

was a fixed term, yearly contract must be rejected. It is undisputed that the slicing fee arrangement lacked a term or duration. Plaintiffs may maintain a tortious interference with an at-will contract claim if they establish defendants maliciously caused a breach or termination of the contract. *See e.g., Getschow v. Commonwealth Edison Co.*, 111 Ill. App. 3d 522, 529-30, 444 N.E.2d 579, 584 (Ill. App. Ct. 1982) (citations omitted). To show malicious interference with a contract, plaintiffs must show defendants' interference was intentional and without justification. *Williams v. Shell Oil Co.*, 18 F.3d 396, 403 (7th Cir. 1994). Plaintiffs have not established a malicious motive on defendants' behalf. Rather, the evidence clearly demonstrates defendants' interference pertained to a desire to produce safe, quality products with efficiency, and was therefore justified. *Id.*

Even if the contract is not at-will, plaintiffs' claim must fail. "Illinois courts have recognized a privilege in intentional interference with contract cases when the defendant acts to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *Id.* Interference to ensure quality of work and safe products has been held privileged. *Id.* Summary judgment on the tortious interference with contract claim must be granted.

To establish tortious interference with prospective economic advantage, plaintiffs must demonstrate: (1) plaintiffs' reasonable expectation of entering into a valid business relationship; (2) defendants' knowledge of plaintiffs' expectancy; (3) intentional and unjustified interference by defendants that caused a termination of plaintiffs' legitimate expectancy; and (4) damages to plaintiffs from the interference. *See Voyles v. Sandia Mort. Corp.*, 196 Ill.2d 288, 300-01, 751 N.E.2d 1126, 1133-34 (Ill. 2001). Interference with a business relationship, as opposed to a valid contract, gives rise to the tort. *Lusher v. Becker Bros., Inc.*, 155 Ill. App. 3d 866, 870, 509 N.E.2d 444, 446 (Ill. App. Ct. 1987) (citations omitted). Defendants argue their right to discharge plaintiffs'

obligation to supply slicing machines precluded any reasonable expectation of a prospective relationship with Peer. Viewing the facts in plaintiffs' favor, the court disagrees. Evidence has been proffered that Peer used plaintiffs' machines to perform slicing services for approximately twenty years prior to their removal.

Nevertheless, plaintiffs' claim fails because defendants' interference was privileged and justified due to their interest in controlling the product's quality. *See Lusher*, 155 Ill. App. 3d at 870, 509 N.E.2d at 446 (where party charged with interference was party for whom work was to be performed, "that party ought to have a say as to who will be doing the work"); *see also Williams*, 18 F.3d at 403 (interference justified when interest in seeing work done safely and with quality was at issue); *Quadro Enterps., Inc. v. Avery Dennison Corp.*, No. 97 C 5402, 1999 U.S. Dist. LEXIS 14904, *27 (N.D. Ill. Sept. 7, 1999) (interference prong will fail if defendant shows it interfered for lawful business reasons). Summary judgment on plaintiffs' tortious interference with prospective economic advantage claim must be granted.

### D.    HBH Franchise Dismissal

Defendants contend plaintiffs have failed to establish HBH Franchise Company played a role in any disputed claims. Because HBH Franchise manages the Honey Baked Ham franchise system and is a separate organization from the Heavenly Ham franchise, defendants contend HBH is a stranger to this suit and should be dismissed. Plaintiffs respond HBH manages the Honey Baked Ham franchise system, is part of the Honey Baked Ham Company and is vicariously liable for the wrongdoing of its agents. The parties' arguments are sparse and conclusory. The court cannot determine HBH Franchise's potential liability on the summary judgment record.

## CONCLUSION

Plaintiffs' motion to amend the answer to the second amended counterclaims is denied. The parties' motions for summary judgment are granted in part and denied in part. Judgment is entered for plaintiffs on defendants' fifth affirmative defense and the court declares continuing fees may only be reduced as a result of plaintiffs' breach of the assignment agreement. Judgment is entered for defendants on the following claims: (1) that replacing Heavenly's machines and failing to use trade secrets to produce the product breached the contract; (2) that the contract requires plaintiffs' approval to change the product; (3) trade secret misappropriation; (4) tortious interference with contractual relations and prospective economic advantage; and (5) the declaratory relief sought in Count IV (B)(C)(D)(E). The motions are denied in all other respects.

February 7, 200

ENTER:

Suzanne B. Conlon
United States District Judge